WO    IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

NIURKA SAMBOIS and ARGENIS SAMBOIS,

        Plaintiffs,

 vs.

UNITED STATES OF AMERICA,

        Defendant.

No. 3:17-cv-0254-HRH

# O R D E R

## Motion to Strike

Defendant moves to strike plaintiffs' third supplemental expert witness disclosure.[1] This motion is opposed.[2] Oral argument was requested[3] but is not deemed necessary.

## Background

Plaintiffs Niurka and Argenis Sambois bring this Federal Tort Claims Act action in which they allege medical malpractice and other claims arising out of Mrs. Sambois' tubal

---

[1]Docket No. 26.

[2]Docket No. 27.

[3]Docket No. 31.

-1-

ligation which was performed on July 30, 2014 by Dr. Sheridan. Plaintiffs allege that on May 11, 2014, Mrs. Sambois "presented to Bassett [Army Hospital] to undergo delivery of her second child by cesarean section surgery. [She] requested a tubal ligation be performed during the cesarean and the surgeon, Dr. Sheridan agreed to the request."[4] Plaintiffs allege however that "Dr. Sheridan failed to perform the tubal ligation as agreed[,]" thus requiring a separate procedure, during which "Dr. Sheridan nicked, perforated, or otherwise injured [Mrs. Sambois'] urinary bladder and/or tract[.]"[5]

The scheduling and planning order in this case provided that plaintiffs' expert disclosures were due on or before October 19, 2018; defendant's were due on or before December 7, 2018; and any rebuttal expert reports were due on or before January 12, 2019.[6] These deadlines were subsequently extended to March 5, 2019; April 23, 2019; and May 29, 2019.[7]

On March 5, 2019, plaintiffs disclosed the expert report of Dr. Charles Ascher-Walsh.[8] In his report, Dr. Ascher-Walsh reviewed Mrs. Sambois' post-operative care and

---

[4]Complaint at 3, ¶ 10, Docket No. 1.

[5]Id. at 3, ¶¶ 11, 14.

[6]Scheduling and Planning Order at 3-4, Docket No. 8.

[7]Order re Stipulated Recalculation of Case Management Deadlines at 1, Docket No. 18.

[8]Exhibit 1, Defendant's Motion to Strike Plaintiffs' Third Supplemental Expert Witness Disclosure, Docket No. 26.

in this review, he mentioned that she suffered from urinary incontinence and eventually had an InterStim device implanted.[9] After reviewing Mrs. Sambois' post-operative care, Dr. Ascher-Walsh set out Mrs. Sambois' "Claimed Injuries" as follows:

> Ms. Sambois continues to suffer from chronic abdominal and pelvic pain with intractable nausea and vomiting. She also has recurrent rectal bleeding. In addition she suffers from persistent insomnia, anxiety and depression. All of these complaints are believed to have originated from the surgical complications of the laparoscopic BTL on July 30, 2014 performed by Dr. Sheridan.[10]

Dr. Ascher-Walsh then opined that

> Dr. Sheridan's care of Ms. Sambois demonstrates a reckless deviation from the standard of care. Dr. Sheridan should have performed the tubal ligation while performing the cesarean section and therefore avoiding a further need for surgery. When performing the surgery she did not take the appropriate care to avoid injury to the bladder which she documented as prominent only 8 weeks before. She also did not take the appropriate steps to diagnose the bladder defect subsequent to causing the injury.[11]

Defendant disclosed its expert report on April 23, 2019; and on May 30, 2019, plaintiffs disclosed Dr. Ascher-Walsh's rebuttal report, in which he "completely disagree[d] with Dr. Berry's assessment of the care provided to Ms. Sambois by Dr. Sheridan."[12] And,

---

[9]Id. at 12-13.

[10]Id. at 13.

[11]Id. at 16.

[12]Expert Rebuttal Report of Charles Ascher-Walsh, MD, at 4, Exhibit 2, Defendant's (continued...)

at his June 28, 2019 deposition, Dr. Ascher-Walsh testified that he did not have any opinions other than those in his expert report.[13]

On July 16, 2019, plaintiffs disclosed an "Addendum Expert Report" from Dr. Ascher-Walsh. In the Addendum Expert Report, Dr. Ascher-Walsh stated that he was

> asked to further discuss the placement of the Interstim device and the reported ovarian cysts. The Interstim was placed because of [Mrs. Sambois'] worsening urinary urgency and frequency after the complicated tubal ligation. The direct injury to the bladder and subsequent repair and the inevitable scarring that resulted would have significantly increased her risks for urinary urgency and frequency. When this occurred after the injury, it is clear that it was the injury that was the most likely cause of her urinary problems. The placement of an Interstim device is an invasive procedure that is typically left to the most severe cases of urinary urgency and frequency. It is likely that Ms. Sambois' condition would never have progressed to this degree if it were not for the bladder injury.[14]

Defendant now moves to strike Dr. Ascher-Walsh's addendum report.

## Discussion

As an initial matter, plaintiffs argue that defendant's motion to strike must be denied because it is untimely. The deadline for filing "dispositive and expert-related (Daubert)

---

[12](...continued)
Motion to Strike Plaintiffs' Third Supplemental Expert Witness Disclosure, Docket No. 26.

[13]Deposition of Charles Ascher-Walsh, M.D. at 74:24-75:14, Exhibit 3, Defendant's Motion to Strike Plaintiffs' Third Supplemental Expert Witness Disclosure, Docket No. 26.

[14]Addendum Expert Report of Charles Ascher-Walsh, MD at 1-2, Exhibit 4, Defendant's Motion to Strike Plaintiffs' Third Supplemental Expert Witness Disclosure, Docket No. 26.

motions" in this case was August 19, 2019.[15] Defendant filed the instant motion on September 4, 2019, which plaintiffs contend means that the instant motion is untimely. Plaintiffs argue that defendant had ample time to file the instant motion prior to August 19, 2019, given that they disclosed Dr. Ascher-Walsh's addendum report on July 16, 2019.

This is not, however, a Daubert motion. Rather, it is "discovery motion", the filing deadline for which was September 9, 2019.[16] This is a discovery motion, not a Daubert motion, because defendant is not seeking to exclude Dr. Ascher-Walsh's testimony based on his qualifications or challenging the reliability of Dr. Ascher-Walsh's opinions. Rather, in the instant motion, defendant seeks to exclude Dr. Ascher-Walsh's newly disclosed testimony as a sanction for plaintiffs' violation of the expert discovery deadline. Because the instant motion is a discovery motion, it was timely.

Turning then to the merits of the instant motion, "Rule 26 requires parties to disclose all expert evidentiary material that may be relied upon at trial, and further provides that these disclosures be made at the times directed by the court." Plumley v. Mockett, 836 F. Supp. 2d 1053, 1061 (C.D. Cal. 2010). There is no dispute that plaintiff's disclosure of Dr. Ascher-Walsh's addendum report was made after all deadlines for expert disclosures had passed.

However, "pursuant to Rule 26(e), a party is under a duty to supplement a Rule 26(a) expert report 'if the party learns that in some material respect the disclosure or response is

---

[15] Order re Unopposed Motion for Extension of Discovery Deadlines at 1, Docket No. 23.

[16] Id.

incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties. . . ." Id. (quoting Fed. R. Civ. P. 26(e)). Rule 26(e) does not "create a loophole through which a party who submits partial expert witness disclosures, or who wishes to revise her disclosures in light of her opponent's challenges to the analysis and conclusions therein, can add to them to her advantage after the court's deadline for doing so has passed." Luke v. Family Care and Urgent Medical Clinics, Case No. 08–35192, 2009 WL 886350, at *2 (9th Cir. Jan. 22, 2009). "Rather, '[s]upplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure.'" Id. (quoting Keener v. United States, 181 F.R.D. 639, 640 (D. Mont. 1998)).

Plaintiffs argue that Dr. Ascher-Walsh's addendum report is a proper supplementation because it clarifies that urinary incontinence and the implantation of a device to alleviate that problem is one of Mrs. Sambois' current complaints, which Dr. Ascher-Walsh believes was caused by Dr. Sheridan's negligence. Plaintiffs contend that Dr. Ascher-Walsh "discussed" the fact that Mrs. Sambois had to undergo implantation of an InterStim device to control her urinary incontinence and that this problem was included in his opinion that her "current complaints stem directly from the complicated laparoscopic BTL performed by Dr. Sheridan. . . ."[17] Plaintiffs contend that the implantation of the InterStim device has always

---

[17]Expert Report of Charles Ascher-Walsh, MD at 14, Exhibit 1, Defendant's Motion to Strike Plaintiffs' Third Supplemental Expert Witness Disclosure, Docket No. 26.

been part of their damages claim and that Dr. Ascher-Walsh's addendum report simply clarifies this.

Dr. Ascher-Walsh's addendum report is not a proper supplementation. Dr. Ascher-Walsh's addendum report does not correct inaccuracies or fill any gaps, but rather is an entirely new causation opinion. The only mention in Dr. Ascher-Walsh's original expert report about urinary incontinence and the InterStim device was in his review of Mrs. Sambois' post-operative care. Dr. Ascher-Walsh did not mention urinary incontinence as one of Mrs. Sambois' "claimed injuries" nor did he offer any opinions as to the cause of her urinary incontinence or the need for the InterStim device. And, these two issues were not mentioned at all in Dr. Ascher-Walsh's rebuttal report. Because Dr. Ascher-Walsh's addendum report is a new causation opinion, and not a supplementation, it was not timely disclosed.

Thus, plaintiffs will be precluded from relying on Dr. Ascher-Walsh's addendum report at trial "unless [their] 'failure to disclose the [addendum report] is substantially justified or harmless.'" Plumley, 836 F. Supp. 2d at 1061-62 (quoting Yeti by Molly Ltd. v. Deckers Outdoors Corp., 259 F.3d 1101, 1106 (9th Cir. 2001)). Factors the court considers in deciding whether the failure to disclose was substantially justified or harmless

> include (1) the public's interest in expeditious resolution of litigation, (2) the court's need to manage its docket, (3) the risk of prejudice to the other parties, (4) the public policy favoring disposition of cases on their merits, and (5) the availability of less drastic sanctions. Although a finding of willfulness or bad faith is not required in order to impose the evidence preclusion

>sanction, willfulness or bad faith is clearly a factor in deciding
>the appropriate level of sanction.

Jackson v. United Artists Theatre Circuit, Inc., 278 F.R.D. 586, 594 (D. Nev. 2011).

Defendant concedes that there has been no bad faith here,[18] but it argues that it was surprised by this new opinion by Dr. Ascher-Walsh because he had never addressed Ms. Sambois incontinence or her InterStim device before. Defendant argues that it would be prejudiced if plaintiffs were allowed to rely on this untimely report because it does not have an urology expert to rebut this new opinion. Defendant contends that the only way to cure this prejudice would be to reopen discovery and extend the dates for expert disclosures, which would delay this case and could disrupt the trial date that the court has set.[19] Given that plaintiffs accuse defendant of continually delaying this case,[20] defendant suggests that plaintiffs presumably would not want to delay this case any more. Defendant acknowledges that plaintiffs have offered to allow defendant to re-depose Dr. Ascher-Walsh and to pay for any associated costs. But, defendant argues that does not cure the prejudice because defendant would still be left without a urology expert unless the court were to reopen discovery.

---

[18]Defendant's Motion to Strike Plaintiffs' Third Supplemental Expert Witness Disclosure at 6, Docket No. 26.

[19]Trial is set to commence on February 3, 2020. Order re Trial Scheduled, Docket No. 29.

[20]Plaintiff Sambois' Opposition [etc.] at 3, Docket No. 27.

Defendant will be prejudiced if Dr. Ascher-Walsh is allowed to offer his new causation opinion. But, that prejudice can be cured by reopening expert discovery in this case. Reopening discovery is in keeping with the public policy of resolving cases on their merits and will not cause any undue delay. Although a trial date has been set in this case, there is sufficient time before the February trial date for the government to find a urology expert, for that expert to prepare a report, and for the parties to depose the experts on the subject of Mrs. Sambois' urinary incontinence and the implantation of the InterStim device. As a sanction for the untimely disclosure of Dr. Ascher-Walsh's addendum report, plaintiffs shall pay for any and all costs associated with the re-deposition of Dr. Ascher-Walsh, which is a less drastic sanction than striking the addendum report.

## Conclusion

Based on the foregoing, defendant's motion to strike Dr. Ascher-Walsh's addendum report is denied. Plaintiffs' request for oral argument is also denied.

Expert discovery in this case is reopened for the limited purpose of addressing Mrs. Sambois' urinary incontinence and the implantation of the InterStim device. On or before October 1, 2019, the parties shall submit a proposed schedule for accomplishing this discovery prior to the final pretrial conference, which is set for January 21, 2020.[21]

DATED at Anchorage, Alaska, this 24th day of September, 2019.

/s/ H. Russel Holland
United States District Judge

---

[21] Order for Pretrial Proceedings and Final Pretrial Conference at 5, Docket No. 32.